**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

KIM BURKS o/b/o J.K.,

Plaintiff,

-vs-

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.,

DECISION and ORDER

07-CV-6165-CJS

## INTRODUCTION

**Siragusa, J.** Plaintiff Kim Burks ("Plaintiff"), brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.) claiming that the Commissioner of Social Security ("Commissioner") improperly denied her application for disability benefits. Specifically, Plaintiff alleges that the decision of an Administrative Law Judge ("ALJ"), which denied benefits to her minor son, J.K., under Title XVI of the Social Security Act, was erroneous and not supported by the substantial evidence contained in the record, or was contrary to law.

The Commissioner now moves for judgment on the pleadings and argues that the ALJ'S decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Plaintiff opposes the Commissioner's motion and has cross-moved for judgment on the pleadings. For the reasons stated below, the Commissioner's motion for judgment on the pleadings is denied, Plaintiff's motion is granted, and this matter is remanded to the Commissioner for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

By application dated December 20, 2001, Plaintiff applied for Supplemental Security Income ("SSI") benefits on behalf of her son, J.K. (Record at 53-54.) Plaintiff alleged that J.K.'s disability began on June 14, 2000. (Record at 53.) The Social Security Administration ("SSA") denied the application on April 1, 2002. (Record at 30-33.) Plaintiff filed a timely request for reconsideration on November 7, 2006, which was denied. On April 19, 2002, Plaintiff requested a hearing before an ALJ. (Record at 34-36.) The hearing was held in Rochester, New York, on May 4, 2004, before Administrative Law Judge Bruce R. Mazzarella. Plaintiff was represented at the hearing by Michael L. Bonsor, Esq., an attorney with the Public Interest Law Office of Rochester. (Record at 15.) Both Plaintiff and J.K. testified at the hearing. On June 4, 2004, the ALJ issued a decision finding that J.K. was not disabled. (Record at 15-26.) Plaintiff requested that the Appeals Council review the decision. (Record at 11.) However, on January 26, 2007, the Appeals Council denied the request. (Record at 5-8.)

On March 26, 2007, Plaintiff commenced the instant action. On February 15, 2008, Commissioner filed his application for judgment on the pleadings (Docket No. 7.) On May 2, 2008, Plaintiff filed her cross-motion for judgment on the pleadings (Docket No. 11.) On July 10, 2008, counsel for the parties appeared before the undersigned for oral argument.

## FACTUAL BACKGROUND

***Medical Evidence***

On June 14, 2000, seven-year-old J.K. was struck by a speeding car while he was walking home from school. He reportedly was unconscious for 10-15 minutes following the

accident and was taken to Rochester General Hospital by ambulance where a CT scan revealed a possible neck injury. J.K. was transferred to Strong Memorial Hospital Pediatric Unit and stayed overnight for two days. He was attended by his primary care pediatrician, Dr. Mary Coan. While hospitalized, J.K. was noted to be sensitive and teary, lethargic, and could not remember how to do simple tasks, such as turn on a computer. Subsequently, his mother reported changes in his behavior, such as taking naps in the afternoon, forgetfulness, irritable behavior and acting increasingly disrespectful. (Record at 270-76.)

Dr. Coan, who remained J.K.'s pediatrician until April 2002, at various times, prescribed Amantadine, Bromocriptine, Concerta and Ritalin. (Record at 253-56.) She noted J.K. looked well and acted appropriately, despite having cognitive/behavioral defects. (Record at 236.)

Michael A. Baer, Ph.D., examined J.K. in August 2000 for a neuropsychological evaluation. Dr. Baer administered a variety of tests including the Child Trail-Making Test, Aphasia Test, Hooper Visual Organizational Test, Bender Gestalt Visual Motor Test and Tactile Form Board, Digit Symbol, Smith Modality Digit Symbol Test, and the House-Tree-Person Technique. Dr. Baer observed that J.K. was frustrated, lashed out, and tended to be somewhat explosive and impulsive. Based on his testing, Dr. Baer concluded that J.K. had a mild impairment in general learning abilities, although his cognitive impairment would most likely subside in time. (Record at 270-76.)

Dr. John G. Schmidt, a neurologist at the Unity Health System Comprehensive Rehabilitation Center, evaluated J.K. on November 9, 2000 for difficulties with concentration, attention, and a tendency toward teasing other children, sometimes hurtfully. J.K. had recently been prescribed Ritalin by Dr. Coan, and was not on any other

medication. A Child's Orientation and Amnesia Test was performed and revealed subtle signs of cognitive defects. Dr. Schmidt diagnosed J.K. as having mild to moderate Traumatic Brain Injury (TBI) with cognitive/behavioral defects. (Record at 243.)

On February 26, 2001, Dr. Schmidt examined J.K. again and considering Dr. Baer's report, recommended a change in medication and cognitive rehabilitation. An MRI was scheduled for J.K. because of a newly discovered "bony protrusion" on the back part of his skull. (Record at 240.)

On March 18, 2001, Dr. Schmidt replaced the Amantadine with Ritalin again because of an allergic reaction. The bony protrusions had decreased, but had not disappeared completely. Dr. Schmidt strongly encouraged Plaintiff to get help from the school, including speech therapy and other services. (Record at 239.)

On December 21, 2001, Dr. Schmidt noted that J.K. appeared to be "struggling with academics and peers and had great difficulty focusing on instruction and completing independent work. His impulsivity [led] to difficulty and unsafe situations." (Record at 238.) Dr. Schmidt referred J.K. for another examination by Dr. Baer and to attend speech therapy.

Christine Ransom, Ph.D., performed a consultative psychiatric examination on J.K. on February 15, 2002. (Record at 225-29; 230-33.) Dr. Ransom administered the Wechsler Intelligence Scale for Children-Third Edition (WISC-III). J.K. scored in the average performance functioning range and his verbal functioning was at the high end of the borderline range. (Record at 226-27.) Dr. Ransom assessed that J.K. could follow and understand age-appropriate directions, complete age-appropriate tasks and maintain appropriate social behavior. (Record at 233.) He could also respond appropriately to

changes in the environment, learn in accordance with his cognitive functioning, ask questions, request assistance in an age-appropriate manner, and interact adequately with adults and peers. Dr. Ransom concluded that J.K. had only verbal learning difficulties and his ADHD[1] was in remission with medication. (Record at 233.)

On February 4, 2002, Speech pathologist Thomas D. House evaluated J.K. in class and administered various language tests. Dr. House noted that claimant followed instructions, but needed more time to process responses to questions. He concluded that J.K. had mild to moderate deficits in receptive and expressive language skills and recommended continued language services. Dr. House recommended that J.K. undergo speech and language services twice a week. (Record at 200.)

On February 18, 2002, Plaintiff and J.K. visited Dr. Schmidt and reported that J.K.'s grades were improving, but still were poor. He was doing well in 1:1 speech therapy, and, while on his medication, his behavior was improved, although he was missing classes by hiding in the bathroom. J.K. was to begin the Medical Management and Assistive Technology for Education of Children (MATCH) program for his TBI and gradually cease speech therapy. (Record at 236.)

Also in February 2002, Sarah White, a certified school psychologist, examined J.K. at Plaintiff's request. (Record at 220 - 25.) Dr. White administered the Woodcock Johnson III tests of Cognitive Ability and of Cognitive Achievement and concluded that J.K. demonstrated average cognitive ability with academic ability in the low average to average

---

[1]Prior to the motor vehicle accident, J.K. had been tested for Attention Deficit Disorder ("ADD") and Attention Deficit Hyperactivity Disorder ("ADHD"), and was negative for both. (Record at 272.) Consultative psychologist Dr. Christine Ransom diagnosed J.K. with ADHD in remission with medication in her February 15, 2002, report. (Record at 228.)

range. (Record at 221.) And while she acknowledged that J.K.'s classroom performance differed significantly from the results of the evaluation, she attributed this disparity to weakness in auditory processing and slower left brain functioning as a result of his accident. (Record at 222.)

Dr. Paulette Harar, a State agency non-examining pediatric consultant, reviewed the record on March 20, 2002, and concluded that J.K. did not have an impairment which met or equaled a Listed impairment. (Record at 246; *see* Record at 277.) She also found that J.K. did not have an impairment or combination of impairments that functionally equaled the Listing. (Record at 246-47.)

J.K. was again examined by Dr. Baer on February 14, 2003. Dr. Baer noted that J.K. had a mild-to-moderate head injury and was unlikely to improve. (Record at 269.) Subsequently, on an April 3, 2003 visit, Dr. Baer indicated that, since an incident where J.K. was suspended, Dr. Schmidt had increased his medication. (Record at 266.)

Dr. Kathryn A. Castle, Ph.D., examined J.K. in March 2003 for complaints related to his ADHD, poor academic performance and purposeful avoidance of work. (Record at 258-62.) During the examination, J.K. was engaged, happy, compliant, and well-groomed. (Record at 260.) His rate of speech, volume, enunciation, speech quality, and thought content were all within normal limits. His thought form was coherent. He was orientated to time, place, person, and recent and remote memory. (Record at 260.) Both the Plaintiff and J.K's teacher, Ms. Rath, expressed difficulties with J.K.'s conduct, hyperactivity, attention, withdrawn behavior, aggression, attention learning difficulties, depression and atypicality. (Record at 258.) Dr. Castle recommended that J.K. participate in brain rehabilitation and begin working one on one with an aide to help him better manage his behavior, as well as

be placed in a special classroom with a 12:1 teacher-to-student ratio. (Record at 260-61.)

On July 13, 2004, Dr. Schmidt examined J.K. while school was not in session and while he was not taking his medication consistently. Plaintiff reported to Dr. Schmidt that J.K.'s behavior was the same, and Dr. Schmidt prescribed Strattera. (Record at 300.)

On May 13, 2004, in notes submitted to the Appeals Council, Dr. Schmidt additionally diagnosed J.K. with Kulver-Bucy syndrome and organic personality disorder with explosive features. He observed J.K. playing with things that were not toys and not attending to conversation. Dr. Schmidt identified this behavior as hyper metamorphosis, or psychic blindness. (Record at 301.)

***Non-medical Evidence***

In a third grade report dated March 12, 2001, J.K. was described as being a wonderful reader, having "great potential as a student," taking "great pride in his work," completing assignments accurately, and continuing to try to amend his behavior. (Record at 215.) It was observed that his grades had dropped because he hadn't turned in homework assignments and because he possessed a lack of concentration in mathematics, but he was not failing any courses. (Record at 215.)

In January of 2002, J.K.'s teacher, Lisa Mooseburger, noted that J.K. had problems in performing age-appropriate self-care activities and in completing work and focusing on instructions. (Record at 134.) She noted that J.K.'s homework was seldom completed, and even with extended time and other accommodations, she saw limited results. (Record at 135.)

On February 28, 2002, an Integrated Summary was prepared in anticipation of a Committee on Special Education ("CSE") meeting. (Record at 100-03.) J.K.'s cognitive

skills were reported to be in the average range, and he was identified as a TBI student with high impulsivity and weak social skills who needed a highly structured environment. Speech and language services were recommended, as was a consultation with the MATCH. (Record at 100.)

On March 1, 2002, the MATCH observed J.K. in both a general education classroom and a smaller class of students who needed extra reading. It was reported that J.K. was polite to the observer, but distractible and disengaged in both settings. (Record at 105.)

On March 13, 2002, the CSE classified J.K. with TBI, as well as having some impairment in cognitive, motor, processing and attention/concentration functioning. (Record at 94.) His fourth grade teacher[2] noted that she was most concerned with J.K.'s difficulties focusing, organizing, and completing his assignments, as evidenced by his classroom work being below grade-level. However, she reported that he possess an average ability in most of the cognitive perceptual and processing areas tested in his psychological assessment. (Record at 94-95.) J.K. remained in a general education classroom, with TBI consult services six times per year, speech therapy ninety minutes per week, and test modifications. (Record at 95.)

In January of 2003, fourth grade teacher Catherine Rath concluded that J.K. needed someone next to him to be sure he did his work because his lack of effort impacted his classroom performance. (Record at 183.) She also commented that his grades were further lowered due to his habit of not doing his homework. (Record at 186.) Ms. Rath also

---

[2]In the minute of the committee on special education, a teacher identified as a "General Education Teacher" is identified by name: Lisa Moosbrugger. However, the minutes do not clarify if this is also the name of J.K.'s fourth grade teacher.

indicated that J.K. was impaired in his ability to comprehend and follow oral instructions, use problem solving skills effectively, interact with others, and carry out instructions and complete tasks on time. (Record at 183-85.)

On January 9, 2004, an individualized education plan ("IEP") was set up for J.K. by the CSE. (Record at 281.) The plan noted that J.K.'s fifth grade work was at the 3.5 to 4.0 grade level in all academics and recommended that current testing modifications be continued. (Record at 282-83.)

In September 2006, J.K's eighth grade primary special education teacher, Sandra Taub, filled out a school questionnaire. (Record at 291-99.) She noted similar problems as to those observed by Mrs. Rath. On December 14, 2006, Ms. Taub further clarified that J.K.'s behavior was the same regardless of whether he was taking his medication. (Record at 305.)

## DISCUSSION

### *I. Standards of Law*

Title 42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." A reviewing court must determine whether the Commissioner's conclusions "are supported by the substantial evidence in the record as a whole or are based on erroneous legal standard." *Schall v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Social Security Act provides benefits for disabled children by way of supplemental security income (SSI). To qualify for SSI, there is no prior work requirement, only a requirement of disability.

In that regard, the test for disability which the Court is well settled:

> To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Pursuant to this statutory dictate, the SSA has enacted a three-step sequential analysis to determine whether a child [is] eligible for SSI benefits on the basis of a disability. 20 C.F.R. § 416.924(a). First, the ALJ considers whether the child is engaged in "substantial gainful activity." *Id.* at § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* at § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment ["meets"], "medically equals" or . . . "functionally equals" a disability listed in the regulatory "Listing of Impairments." *Id.* at § 416.924(c)-(d); *Id*. at pt. 404, subpt. P.

*Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004). Obviously, if the impairment meets a listed disability, the child is found disabled. On the other hand, "[i]f the child is missing a required finding or exhibits the condition at an insufficiently severe level but has other medical findings of "equal medical significance," he will be said to "medically equal" the listing. *Nieves ex rel. Nieves v. Barnhart,* No. 02 Civ. 9207 (RWS), 2004 WL 2569488 at *5 (S.D.N.Y. Nov. 12, 2004) (citing 20 C.F.R. § 416.926(a)(1)(ii)).

The Commissioner's regulations found at Appendix 1 of 20 C.F.R. Subpart P, Part 404, describe "listed" impairments. These regulations list those impairments which are granted an "irrebuttable presumption of disability." *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir. 2000). To satisfy the listing, the claimant must meet the requirements in part A and B. As pertains to this case, to meet part B, children between the ages of three and eighteen must meet two of the following:

> a. Marked impairment in age-appropriate congnitive/communication function,
> b. Marked impairment in age-appropriate social functioning,

c. Marked impairment in age-appropriate personal functioning,
d. Marked difficulties in maintaining concentration, persistence, or pace.[3]

Alternatively, a claimant may prove disability by demonstrating "functional equivalence," which requires an inquiry into a child's function in "six domains." These six domains consider the child's ability:

> (1) to acquire and use information;
> (2) to attend and complete tasks;
> (3) to interact and relate with others;
> (4) to move about and manipulate objects;
> (5) to care for oneself; and
> (6) health and physical well-being.
>
> 20 C.F.R. § 416.926a(a)-(b) (2001). . . . [I]n order to demonstrate functional equivalence. . . , the child must exhibit a "marked" limitation in two of the domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). . . . [A]n impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

*Pollard v. Halter,* 377 F.3d at 190.

Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not

---

[3] Http://www.ssa.gov/disability/professionals/bluebook/112.00-MentalDisorders-Childhood.htm#112.02%20Organic%20Mental%20Disorders.

be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)(*citing* 20 C.F.R. § 404.1527(d)(4)). Consequently, where a treating physician's opinions are inconsistent with other substantial evidence in the record, his opinion is not entitled to controlling weight. *Snell v. Apfel*, 177 F.3d at 133. In such a case, the ALJ not only must decide what, if any, lesser weight to assign to the treating physician's opinion, but must also explain that decision. *Id*. ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.")(citation omitted). The Commissioner's regulations state that, "[u]nless we give a treating source's opinion controlling weight . . . we consider all of the following factors in deciding the weight we give to any medical opinion. (1) Examining relationship . . . . (2) Treatment relationship . . . . (3) Supportability . . . . (4) Consistency . . . . (5) Specialization . . . . (6) Other factors." 20 C.F.R. § 416.927(d)(2); *see also*, 20 C.F.R. § 404.1527(d); *Schaal v. Apfel*, 134 F.3d at 504 (Finding that the ALJ did not properly apply the treating physician rule, in part, because he "failed to consider all of the factors cited in the regulations.").

As to the treating physician rule, if the ALJ fails to properly weigh evidence, the court cannot do so; instead, the matter must be remanded. *See, Schaal v. Apfel*, 134 F.3d at 504 ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.") (citation omitted); *accord, Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Moreover, the ALJ should not reject a treating physician's opinion as being unsupported, without first attempting to develop the record. *See, Schaal v. Apfel*, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the physician] *sua sponte*."); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.

2000) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."); *Rosa v. Apfel*, 1998 WL 437172 at *4 (S.D.N.Y. Jul. 31, 1998) ("A simple follow-up request from the ALJ could have resulted in an assessment of the claimant's residual functional capacity from his treating physician.").

***II. The ALJ's Decision.***

At the first of the three-step analysis set forth above, the ALJ found that J.K. had not engaged in substantial gainful activity since his alleged onset date. (Record at 16.) At the second step, the ALJ found that J.K. had a severe impairment, namely, "traumatic brain injury (TBI); a learning disability; language delay; attention deficit hyperactivity disorder (ADHD); and behavior problems, which are 'severe' within the meaning of 20 C.F.R. § 416.924(c)...." (Record at 16.) At the third step, however, the ALJ concluded that J.K.'s impairment did not meet, or medically or functionally equal, any of the impairments listed of Appendix 1, Subpart P, Regulations No. 4. (Record at 20.)

Specifically, with regard to functional equivalence, the ALJ concluded J.K. had no limitations in his ability to move about and manipulate objects or in his ability to care for himself, and had "less than marked" limitations in the remaining four domains. (Record at 21-25.) In the domain of acquiring and using information, the ALJ determined that although J.K. has a learning disability, suffers from delayed language, and requires speech therapy, he has a sufficient IQ and his grades are not "severely below grade level." (Record at 21.) In the domain of attending and completing tasks, the ALJ found that although J.K. reportedly has "greater impulsivity, decreased focusing and decreased memory tasks when not taking his medication...," Dr. Ransom noted that while on medication, J.K. "could attend

to, follow, and understand age-appropriate directions, complete age-appropriate tasks of a non-verbal nature…." The ALJ also determined that J.K.'s ADHD was fairly under control with the aid of medication. (Record at 22.) In the domain of interacting and relating with others, the ALJ found that while J.K. "had some behavior problems and poor frustration problems, yet he was also described as friendly and polite by the school psychologist…." (Record at 23.) His mother reported at the hearing that although J.K. experienced some impulsive behavior, it seemed to be decreasing over the last year. *Id*. Finally, in the domain of health and physical well-being, the ALJ found while J.K. suffered from TBI that resulted in "speech, language, attention and concentration deficits, it has not caused any other health or physical problem." (Record at 24.)

**ANALYSIS**

Plaintiff requests that this matter be remanded solely for the calculation of benefits. In that regard, Plaintiff contends that the ALJ erred by failing to find that J.K.'s impairment meets listing 112.02. Alternatively, she submits that the ALJ erred in failing to find that J.K.'s impairments are functionally equivalent to a listed impairment. However, remand for that purpose is warranted only where,

> the reversal is based solely on the Commissioner's failure to sustain [her] burden of adducing evidence of the claimant's capability of gainful employment and the Commissioner's finding that the claimant can engage in 'sedentary' work is not supported by the substantial evidence.

*Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000) (Citations and internal quotation marks omitted). In such a case, "no purpose would be served by our remanding the case for rehearing." *Id.* Here, by contrast, the Court concludes that remand for a new hearing is required to allow the ALJ to correct errors of law identified below.

In his decision, the ALJ determined that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (Record at 20.) Plaintiff asserts that such conclusion on the ALJ's part runs counter to the opinions reached by J.K.'s treating physicians, Dr. Baer and Dr. Schmidt, and that the ALJ failed to adequately explain his reasons for rejecting such opinions. The Court agrees. Whether the evidence establishes that J.K.'s impairments meet or medically equal a listed impairment was summarily decided by the ALJ with little more than one sentence: "At the third step of the sequential evaluation process, the undersigned finds that the claimant's impairments do not meet or medically equal the criteria of any of Listing 112.02 or any other listing." (Record at 20.) The ALJ does not discuss the weight, if any, that he gave either treating physician's opinion. Accordingly, the Court determines that the ALJ did not properly evaluate the opinions of Plaintiff's treating physicians, requiring a remand to do so.

The Court also determines that the Commissioner failed to properly weigh all of the relevant evidence pertaining to Plaintiff's mental impairments. Specifically, the Appeals Council did not consider Dr. Schmidt's final letter of July 13, 2004. (Record at 300.) In this letter, Dr. Schmidt listed two new impairments: organic personality disorder with explosive features and Kulver-Bucy syndrome. The record should contain an opinion as to the *combined effect*, if any, of Plaintiff's TBI, organic personality disorder with explosive features and Kulver-Bucy syndrome. The relevant statute states that,

> [i]n determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the *combined* effect of all of the individual's impairments without regard to whether any such impairment, *if considered separately*, would be of such severity. If the Commissioner…does find a medically severe combination of impairments, the

> combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B) (emphasis added). On remand, the ALJ should seek additional information so as to enable him to quantify and evaluate Plaintiff's mental impairments in accordance with Listing 112.02.

Although Plaintiff asks the Court to determine that the evidence in the Record leads to the conclusion that J.K.'s impairment or combination of impairments meets or functionally equals an impairment in the Listing, the Court does not find sufficient medical evidence to support this argument. Plaintiff states "[a]lthough they [Dr. Schmidt and Dr. Baer] did not rate J.K.'s impairments as specifically as his teachers did, it appears they were never asked to do so." (Memorandum of law in support of Plaintiff's motion for judgement on the pleadings at 20.) Plaintiff relies solely on the statements and opinions of J.K.'s teachers to conclude that his impairment or combination of impairments meet or functionally equal an impairment under the Listing.

In her July 11, 2008 letter to the Court, Plaintiff offers *Quinones v. Chater,* 117 F.3d 29 (2d Cir. 1997), in support her submission that the Court should rely solely on J.K.'s teachers' opinions. In *Quinones*, there were strong teacher reports buttressing the claim of the plaintiff's concentration disability, despite evidence from psychologists that could be interpreted as contrary to the teachers' reports. The court in that case remanded for an unrelated impairment, but noted that the psychologists' "at best inconclusive" reports were not enough to defeat the teachers' reports indicating a concentration disability. *Id*. at 35.

In the instant case, while the treating physician's opinions are inconclusive, there exists contradicting medical evidence. Specifically, Dr. Paulette Harar, a State agency non-

examining pediatric consultant, opined that J.K. did not have an impairment which met or medically equaled a Listed impairment. (Record at 246-47.) The Court concludes that in the face of a differing medical opinion of J.K.'s impairments, his teachers' assessments alone do not require a finding that he is disabled.

**CONCLUSION**

For all of the foregoing reasons, the Commissioner's motion (Docket No. 7) for judgment on the pleadings is denied, Plaintiff's cross-motion (Docket No. 11) for judgment on the pleadings is granted, and this case is remanded, pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this Decision and Order.

IT IS SO ORDERED.

Dated: September 9, 2008
Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge